UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAYSE KONIECZNY,

                        Plaintiff,

                                                                  <u>DECISION AND ORDER</u>

                                                                  06-CV-6584L

             v.

NEW YORK STATE DIVISION OF PAROLE,

                        Defendant.
_____

Plaintiff Kayse Konieczny ("plaintiff") brings this action alleging discrimination in employment on the basis of disability, as well as failure to reasonably accommodate her disability, against her former employer, the New York State Division of Parole (the "Division"), pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12112 et seq. The Division now moves for summary judgment (Dkt. #13). For the reasons stated below, the Division's motion is granted and the complaint is dismissed.

**Factual Background**

Plaintiff was employed by the Division as a Keyboard Specialist ("KSB") 1, a typing position which also involved some switchboard work and filing, from September 28, 2000 until January 24, 2005. It is undisputed that due to the nature of operations at the Division office, the office environment was generally noisy, chaotic, and stressful. On occasion while working at the reception

desk, plaintiff was subjected to verbal abuse, and even had things thrown at her, by disgruntled parolees. Plaintiff complained to the Department of Labor about the office conditions, and testified that she generally had difficulty maintaining positive relationships with her coworkers. Plaintiff's relationship with one particular coworker degenerated to the point where plaintiff filed a complaint with the Public Employee Relations Board alleging a lack of union support in dealing with the other employee.

Plaintiff reports that during her employment with the Division, she experienced panic attacks and did not want to go to work. In July of 2003, she sought medical treatment, and was diagnosed with depression and a panic disorder, for which she was prescribed anti-depressant medications. Nonetheless, plaintiff's job performance reviews were consistently satisfactory.

During her employment at the Division, plaintiff states that she periodically interviewed for positions with other state agencies. One of those positions was a KSB 2 position, which was filled in April 2004 with Marilyn Diaz ("Diaz"), a former coworker of plaintiff's within the Division. As the KSB 2, Diaz was plaintiff's direct supervisor.

On June 23, 2004, plaintiff was hospitalized for a week due to an embolism. She was diagnosed with Factor Five Leiden, a genetic blood disorder characterized by the tendency for blood to clot abnormally. Plaintiff was prescribed anti-clotting medications, and returned to work on August 12, 2004 with restrictions imposed by her physician: working half-days, working no more than five days per week, and lifting no more than ten pounds. It is undisputed that these restrictions were honored by the Division.

On September 10, 2004, plaintiff's physician permitted her to return to work full-time, with the following restrictions: (1) lifting no more than ten pounds; (2) sitting no more than an hour at a time (and then standing and walking for a minute to facilitate blood circulation); and (3) avoiding cuts and bruises. After returning to work, plaintiff made several oral requests for accommodations to Diaz, including a flexible schedule, repairs to bathroom doors (to prevent cuts and bruises), the ability to use gloves when filing (to prevent cuts), a lifting limitation of ten pounds, the ability to receive telephone calls from her physician, a new desk and the ability to stand while at the switchboard. Diaz ultimately granted each of the plaintiff's requests, with the exception of a flexible schedule and bathroom door repairs. Plaintiff was also initially permitted to take time off, making use of compensatory time ("comp time," meaning leave earned through overtime work) and vacation credits earned by other employees and voluntarily donated to plaintiff, although Diaz eventually halted the practice and prohibited employees from donating further time to plaintiff. The parties dispute whether this prohibition was contrary to the provisions of an applicable employment agreement.

After contacting her union representative, an Employee Assistance Program Employee and a Division employee concerning her accommodation rights, plaintiff was advised that blood conditions were generally not considered a disability for reasonable accommodation purposes. Nonetheless, the Division provided plaintiff with a medical records release for so that her requests could be reviewed. Plaintiff did not return the release, or otherwise formally apply for accommodations with the Division.

Shortly after her return to full-time work, plaintiff requested to work overtime, but was instructed that she needed to obtain medical clearance before doing so. Plaintiff obtained the requested permission from her physician, but the parties dispute whether plaintiff was thereafter assigned overtime.

At some point thereafter, Diaz counseled plaintiff on several occasions with respect to performance issues, including attendance, morale, use of break time, use of the telephone and filing procedures. Plaintiff alleges – and the Division denies – that these meetings were comprised primarily of discussions relating to plaintiff's medical condition and her various requests for accommodations.

Plaintiff took a sick leave from work from November 30, 2004 through December 13, 2004. Upon her return, she began inquiring about other positions with the State. In January 2005, plaintiff left the Division and accepted a lateral transfer to a position with the New York State Department of Health, with no change in compensation or benefits.

## DISCUSSION

### I. Summary Judgment

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*.

When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## II.     Plaintiff's Discrimination Claims

Plaintiff's claims of employment discrimination are subject to the burden-shifting analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) the employer is subject to the ADA; (2) plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations; and (4) plaintiff suffered adverse employment action because of her disability. *See Rambacher v. Bemus Point Cent. Sch. Dist.*, 307 Fed. Appx. 541, 543-544 (2d Cir. 2009); *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003).

Once plaintiff has established a *prima facie* case, the burden shifts to the Division to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is pretextual. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

While granting plaintiff the liberal interpretation and favorable inferences due to her as a nonmovant, I find that plaintiff cannot make out a *prima facie* case of discrimination or retaliation, and thus, her claims must be dismissed.

**III.     Plaintiff's Discrimination Claim**

Title I of the ADA prohibits employers from discriminating again any "qualified individual with a disability because of the disability of such individual in regard to" any aspect of employment. 42 U.S.C. §12112(a).  A plaintiff asserting a violation of the ADA must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.  *See Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).  For purposes of the ADA, a disabled individual is one who: "(i)  has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."  42 U.S.C. §12102(2).

An impairment cannot be demonstrated by bare evidence of a medical diagnosis: rather, the ADA "requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial."  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). In assessing the severity of the impairment for the afflicted individual, the Court should consider, "(I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j)(2).

Here, plaintiff cannot demonstrate either the existence of a qualifying disability, or an adverse employment action by the Division.  Initially, plaintiff has produced no evidence that her blood

disorder and/or panic attacks substantially limit her ability to perform major life activities, that there was a record of such an impairment, or that she was regarded as having such an impairment by the Division. *See generally* 29 C.F.R. § 1630.2(j)(1)(ii)( "substantially limits" means "[s]ignficantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity"); *Capobianco v. City of New York*, 422 F.3d 47, 56 (2005) (in order to be a disability, an impairment must limit a major life activity, and be substantial); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir. 1998) ("the impairment must be significant, and not merely trivial").

To the contrary, plaintiff admits that despite her ten-pound lifting restriction and requirement to change position occasionally and avoid bruises and cuts, she was at all relevant times able to engage in major life activities, including performing the requirements of her position with the Division, as well as a full range of non-work activities including thinking, seeing, hearing, driving, shopping, and caring for herself and her household. It is undisputed that the Division complied with the vast majority of plaintiff's requests for accommodations within her workplace, and plaintiff provides no evidence that the Division's alleged disinclination to provide two of the requested accommodations – a flexible schedule and additional overtime – hampered her job performance in any substantial way, or that the Division otherwise regarded her as being substantially impaired. Despite plaintiff's arguments to the contrary, the mere fact that the Division temporarily permitted other employees to donate comp time and vacation time to plaintiff does not suggest that the

Division regarded her as impaired, particularly in light of plaintiff's assertion that she was contractually entitled to such an arrangement.

Even if plaintiff were able to demonstrate that she was disabled for purposes of the ADA, there is no evidence that plaintiff was subjected to an adverse employment action. "While there is no bright-line rule as to what constitutes an adverse employment action, the Second Circuit emphasizes that 'not every unpleasant matter short of [termination or demotion] creates a cause of action.'" *Ongsiako v. City of New York*, 199 F. Supp. 2d 180, 186-187 (S.D.N.Y. 2002), *quoting Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). It is undisputed that plaintiff's pay, benefits and position remained the same throughout her employment, and her subsequent lateral transfer to another position was entirely voluntary. Nor does plaintiff offer any evidence of "[l]esser actions such as negative employment evaluation[s]" and formal reprimands which adversely affected her employment or injured her ability to secure future employment. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). *See generally Wanamaker*, 108 F.3d 462 at 466 (anti-discrimination statutes generally protect "individuals from actions injurious to current employment or the ability to secure future employment").

To the extent that plaintiff claims that Diaz's meetings and comments concerning her performance, and/or the everyday stresses of the Division office, amounted to an adverse employment action in the form of a constructive discharge, plaintiff has made no showing that a reasonable person subjected to the same working conditions would have felt compelled to resign. *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 161 (2d Cir. 1988); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983). Constructive discharge will be found where an employee is exposed

to an "unreasonable risk of physical harm, to significant verbal abuse, or [be] forced to accept significantly lower pay or inferior working conditions." *Ternullo v. Reno*, 8 F. Supp. 2d 186, 191 (N.D.N.Y. 1998), *citing Pena*, 702 F.2d 322 at 325. However, lesser incidents of over-criticism by supervisors, unfavorable job assignments, humiliation and stress will not sustain a constructive discharge claim. *See Ternullo*, 8 F. Supp. 2d 186 at 191 (collecting cases).

Here, plaintiff has neither alleged nor demonstrated that she was ever subjected to verbal abuse, a rise of physical harm, or other intolerable conditions with the Division, let alone that such conduct was motivated by her alleged disability. While plaintiff testified that working in the Division office was stressful and that parolees were occasionally unpleasant and/or abusive, it is undisputed that all of plaintiff's coworkers were operating under precisely the same conditions, and that encounters with parolees were a normal and necessary aspect of work with the Division.

Because plaintiff cannot meet the threshold for demonstrating a constructive discharge or otherwise show that she was subjected to an adverse employment action, her disability discrimination claims must be dismissed.[1]

---

[1] To the extent that plaintiff alleges that she was subjected a hostile work environment, "the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environments." *Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 149 (D. Conn. 2008). Assuming *arguendo* that such a cause of action may be maintained, plaintiff's hostile work environment claim fails because she has not established that she has a disability within the meaning of the ADA. *See Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 346 (E.D.N.Y. 2008). In any event, plaintiff has also offered no evidence that she was subjected to harassment that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," or of any causal connection between her allegations that Diaz scrutinized her excessively, counseled her unnecessarily about performance issues, and gave her "dirty looks," and her disability diagnosis, which was made *after* the majority of the conduct about which she complains. *Id*. *See also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

**III.     Plaintiff's "Failure to Accommodate" Claim**

To establish a *prima facie* case of discrimination because of disability premised upon an employer's failure to accommodate, a plaintiff must show: "(1) that she is an individual who has a disability within the meaning of the ADA, (2) that an employer covered by the statute had notice of her disability, (3) that with reasonable accommodation, she could perform the essential functions of [her position], and (4) that the employer has refused to make such accommodations." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001), *quoting Stone v. City of Mt. Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997).

For the reasons set forth above, plaintiff has failed to demonstrate that she suffers from a disability within the meaning of the ADA. Furthermore, even if plaintiff were able to make such a showing, the record demonstrates that the "accommodations" she was allegedly denied – a flexible schedule and/or overtime – were not reasonable, because they were not necessary for her to perform the essential functions of her position. *See Borkowski v. Valley Central Sch. Dist.*, 63 F.3d 131, 139-140 (2d Cir. 1995) (although "[o]n the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits," this requirement "will permit district courts to grant summary judgments for defendants in cases where the plaintiff's proposal is . . . clearly ineffective").

Plaintiff's physician indicated only that plaintiff should avoid cuts, bruises, sitting for prolonged periods and lifting more than ten pounds, and there is no evidence, medical or otherwise, that a flexible work schedule or the opportunity to work additional overtime hours during the week are reasonable and *bona fide* accommodations for the limitations imposed by plaintiff's blood

disorder and panic disorder. Indeed, it is difficult to imagine how the assignment of overtime work, which would only increase the demands of plaintiff's employment beyond the normal limits of full-time work, could ever be considered an accommodation for the disabilities which plaintiff alleges made working more difficult. In any event, accepting plaintiff's factual allegations as true, plaintiff offers no evidence that she was unable to adequately perform the requirements of her position without a flexible schedule or overtime, thus tacitly conceding that such accommodations were not necessary to her job performance. Because the requested accommodations would be "clearly ineffective" in assisting plaintiff with performing the essential requirements of her position, her ADA claim of failure to accommodate must be dismissed.

## IV.    Plaintiff's Retaliation Claim

Claims of retaliation pursuant to the ADA are also analyzed under the familiar *McDonnell Douglas* burden-shifting rules. *See Kemp v. Metro-North R.R.*, 316 Fed. Appx. 25, 26-27 (2d Cir. 2009). To make out a *prima facie* claim for retaliation, a plaintiff must show: (1) that she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's protected activity and the adverse employment action. *See id*.; *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000). Once a plaintiff makes out a *prima facie* case of retaliation, the burden shifts back to the employer to show that there was a legitimate, non-retaliatory reason for the adverse employment action. If the employer meets this burden, the burden shifts back to the plaintiff to show that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Richardson*, 180 F.3d at 443,

*citing Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998). Protected activity includes the making of a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing pursuant to the ADA. *See* 42 U.S.C. §12203(a). Requesting reasonable accommodations for a disability may also constitute protected activity. *See Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148-149 (2d Cir. 2002) (a retaliation claim may be based on a request for reasonable accommodation); *Jenkins v. New York City Transit Auth.*, 2009 U.S. Dist. LEXIS 56008 at *20 (S.D.N.Y. 2009) (same).

It is undisputed that plaintiff made a series of informal requests to her supervisor for accommodations. However, as set forth above, plaintiff has not demonstrated that she had a qualifying disability, that she was subjected to an adverse employment action, or that she requested reasonable – as opposed to ineffective or unnecessary – accommodations. Plaintiff's retaliation claim must therefore be dismissed.

### Conclusion

For the foregoing reasons, the motion for summary judgment by the New York State Division of Parole (Dkt. #13) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
August 17, 2009.